UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 176 |
| v. | ) | |
| | ) | |
| CHRISTOPHER HARTNEY | ) | |

FILED
S-30-07
MAY 3 0 2007
UNITED STATES DISTRICT COURT

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, CHRISTOPHER HARTNEY, and his attorney, RICARDO J. BIRD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in Case No. 07- CR-00176-1.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, CHRISTOPHER HARTNEY, and his attorney RICARDO J. BIRD, have agreed upon the following:

1. Defendant acknowledges that he has been charged by information in this case with copyright infringement, in violation of Title 17, United States Code, Sections 506(a)(1), and Title 18, United States Code, Sections 2319(b)(1).

2. Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crime with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to the information in this case.

5. Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and also constitute relevant conduct pursuant to Section 1B1.3 of the Guidelines:

(a) From on or about January 2003 to on or about April 21, 2004, in Downer's Grove, in the Northern District of Illinois, defendant did willfully and for the purpose of commercial advantage and private financial gain infringe the copyright of copyrighted works by distributing during a 180-day period ten or more copies of one or more copyrighted works, which copyrighted works had a retail value of more than $2,500, in

violation of Title 17, United States Code Sections 506(a)(1), and Title 18, United States Code, Sections 2319 (b)(1).

(b) Specifically, from at least January 2003 until on or about April 21, 2004, defendant was a participant in the "warez scene" -- an underground online community comprised of individuals and organized groups who engage in the large-scale duplication, modification, reproduction, and distribution of copyright protected software over the Internet, in violation of federal copyright law. The leading warez "release" groups compete with one another to attain the reputation as the fastest, highest-quality provider of "pirated" software -- that is, computer software, games, movies, and music files that have been "cracked" (i.e., had their copyright protections removed or circumvented). Warez groups compete with one another to be the first to release new pirated software to the warez community for unauthorized reproduction and distribution worldwide. Preparing new pirated software for release and distribution to the warez scene generally requires a number of different steps. First, an individual known as a "supplier" will post an original copy of new computer software or other digital media to an FTP server on the Internet known as a "drop site." Frequently, "suppliers" are company insiders, software testers, or reviewers who can provide final versions of new product before it is released to the general public. Once the new supply is posted to the "drop" site, another individual, known as a "cracker," retrieves the software and removes or otherwise circumvents its copyright protection controls, including serial numbers, tags, duplication controls, and/or security locks. Once successfully cracked, the

software is tested and packed for final posting to the "drop" site, where it is picked up by couriers for rapid distribution to other warez sites worldwide and, eventually, reaches public distribution channels such as publicly-accessible websites or online auctions. The entire process – from the initial appropriation of the copyrighted work to its worldwide pirated distribution – can, and typically does, occur within a matter of hours.

(c) FTP is a communication protocol for transferring files between computers connected to the Internet. FTP sites – also known as FTP servers – are computers connected to the Internet that serve as large storage facilities for software or other digital files which, in turn, may be copied and downloaded by users of the site through the FTP protocol. In the warez scene, FTP sites are most often used to store and crack copyright protected software and other digital media and to host, collect, distribute, and trade illegal warez. These sites are not accessible to the general public. Access to FTP warez sites is typically controlled through a variety of security mechanisms. For example, a user is typically required to log on to the FTP site using a screen name and password approved by one of the system administrators for the FTP site. In most cases, the final level of authentication, which is done automatically, requires the user to attempt access to the FTP warez server only from a specific, authorized Internet Protocol (or "IP") address previously supplied to the system administrator(s). Failure to meet any of the security requirements results in a denial of access to the FTP server.

(d) Active participants in the release and distribution process are rewarded in a variety of ways, often with privileged access to large, non-public caches of pirated works on warez FTP sites. With this access, a user is able to download vast amounts of pirated software for personal use or further distribution.

(e) The Federal Bureau of Investigation (FBI) has conducted an investigation into various members of the warez community and has identified the defendant as a member of a warez FTP server which was being used to illegally reproduce and distribute copyright protected software, movies, games and music.

(f) From on or about January 2003 through on or about April 21, 2004, the identified warez FTP server continued to grow in size and contained approximately 13,000 pirated software titles including movies, games, utility software and music.

(g) Evidence obtained from the warez FTP server included computer-generated log files containing information regarding the activities of computer users, processes running on a computer, and the activity of computer resources. Log files may include "transfer logs" that capture information about each FTP file transfer. Transfer logs may include the date of transfer, name of the file transferred, direction of transfer (upload or download), the name or nickname of the individual accessing the computer, and the IP address of the computer sending or receiving the file.

(h) Transfers logs obtained from the warez FTP server indicate that the defendant assisted in the uploading of 4855 software titles and downloading 402 software

5

titles to and from the warez FTP server between August 16, 2003 and March 29, 2004. For any six month period during the time alleged in the information, the transfer logs evidence that the defendant reproduced and/or distributed at least ten (10) copies of copyright protected software by transferring said software files to or from the warez FTP server and, collectively, the retail value of transferred software exceeded $2,500. Records obtained from the defendant's Internet Service Provider confirm that the defendant accessed the warez FTP server from a computer located at his residence located at 5427 Lee Avenue, Downer's Grove, Illinois.

(i) On April 21, 2004, FBI agents executed a search warrant at the Defendant's residence and confiscated several personal computers, various computer components, electronic equipment and numerous CD and DVD diskettes. At the time of the search, the Defendant cooperated with Agents and provided a signed statement detailing his willing involvement in the illegal reproduction and distribution of computer software.

(j) A directory listing of business software titles from the FTP server was provided to the Business Software Alliance (BSA). The BSA represents certain software manufacturers that produce business, utility and application software products. The BSA confirmed that the directory listing of software titles found on the warez FTP server included certain products owned by their client companies which were subject to copyright protection and collectively exceeded $2,500 in retail value.

6

(k) Although defendant did not engage in the commercial sale of pirated software, he did receive "personal financial gain" within the meaning of the criminal copyright statute, see 17 U.S.C. §§101 & 506(a)(1) and the <u>Federal Sentencing Guidelines</u> §2B5.3, Application Note 1, in that he received, and expected to receive, access to other copyrighted works at no cost.

(l) Based on the investigation to date, the defendant's conduct in the infringement of copyright protected software in instant case has resulted in an infringement amount attributable to the defendant of approximately $30,000 to $70,000.

6. For purposes of calculating the guidelines promulgated by the United States Sentencing Commission, pursuant to Title 28 United States Code, Section 994, effective as of November 1, 2004, the parties agree on the following points:

(a) The base offense level for the offense of conviction is 8, pursuant to Guideline § 2B5.3(a).

(b) Pursuant to Guideline §§ 2B5.3(b)(1)(B) and 2B1.1(b)(1)(D), the base offense level must be increased 6 levels because the retail value of the infringed items defendant reproduced is more than $30,000 and less than $70,000.

(c) Pursuant to Section 2B5.3(b)(2), the base offense level should be increased by an additional two (2) levels because the offense involved the "uploading of infringing items."

(d) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct and has assisted authorities in the investigation by timely providing notice of his intent to plead guilty. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guideline § 3E1., a three-level reduction in the offense level is appropriate.

(e) Based on the facts known to the government, the defendant's criminal history points equal 0 and the defendant's criminal history category is I; and

(f) Based on the preliminary calculations above, defendant's projected offense level is 13, defendant's projected Criminal History Category is I, and the projected sentencing range is 12-18 months in Zone C.

(g) The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

(h) Defendant understands that, in imposing the sentence, the Court will be guided by the United States Sentencing Guidelines. The defendant understands that the

Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

8. Defendant understands the offense to which he will plead guilty carries a maximum penalty of five years imprisonment, a maximum fine of up to twice the amount of the gross pecuniary gain to defendant or twice the amount of gross pecuniary loss to the victims or $250,000, whichever is greater, a term of supervised release of not more than 3 year, and any restitution ordered by the Court

9. Defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, defendant will be assessed $100 on the count to which he has pled guilty, in addition to any other penalty imposed. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order made payable to the Clerk of the U. S. District Court.

10. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charge against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine

them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

11. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.

12. The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined, on the grounds set forth in Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives her right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

13. Defendant understands that the information and this Plea Agreement are matters of public record and may be disclosed to any party.

14. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

15. At the time of sentencing, the parties shall recommend any sentence they deem appropriate.

16. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose up to the maximum penalties as set forth in paragraph 8 above. However, the sentencing court is obligated to consult and take into account the Sentencing Guidelines in imposing a reasonable sentence.

17. Regarding restitution, the parties agree that the number of identifiable victims in this case is so large as to make restitution impracticable, and that determining complex issues of fact related to the amount of the victims' losses would complicate and prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. Accordingly, pursuant to Title 18, United States Code, Section 3663A(c)(3), restitution is not mandatory. The defendant understands that Title 18, United States Code, Section 3664 and Sections 5E1.1 and 5E1.2 of the Sentencing Guidelines set forth the factors to be weighed in setting a fine and restitution and in

determining the schedule, if any, according to which restitution is to be paid in this case. The defendant agrees to provide full and truthful information to the court and United States Probation Officer regarding all details of his economic circumstances in order to determine the fine and restitution and proper restitution schedule according to which the defendant may be ordered to pay. Defendant understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the court.

18. Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. He further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

19. Defendant and his attorney acknowledge that no threats, promises, or

representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

20. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

21. Should the Court refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

22. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 5/30/07

_____  
PATRICK J. FITZGERALD  
United States Attorney

_____  
CHRISTOPHER HARTNEY  
Defendant

_____  
PRAVIN B. RAO  
Assistant United States Attorney

_____  
RICARDO J. BIRD  
Attorney for Defendant